UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| O.O.C. APPAREL, INC., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> ROSS STORES, INC., APPAREL : <br> TRANSPORTATION, INC., BAZAK : <br> INTERNATIONAL, INC., ELITE : <br> FREIGHT FORWARDERS, ABC CORP., : <br> XYZ CORP., Bob and Betty Smiths, and : <br> John and Jane Does, : <br> : <br> Defendants. : <br> : | Civil Action No. 04-6409 (PGS) <br><br> **OPINION** |

Plaintiff OOC Apparel, Inc. ("OOC") filed this lawsuit alleging counterfeiting, infringement, unfair competition, violation of the Federal Trademark Dilution Act, and unjust enrichment. After both parties moved for summary judgment, the Court issued an oral decision, denying plaintiff's motion for summary judgment on liability, and granting defendants' motion for summary judgment in part, dismissing plaintiff's claims for counterfeiting and infringement under §32 of the Lanham Act, as well as the claim for dilution of a famous mark under §43(a), and denying the motion as to unfair competition under §43(a) of the Lanham Act and unjust enrichment. Defendants have moved to reconsider. Plaintiff has not filed any opposition.

I.

On October 17, 2000, OOC entered into a License Agreement (the "License") with Christian Casey, LLC, the licensor of the Sean John trademark. The License, which pertained to eight categories of articles including "men's underwear Articles, loungewear and robe Articles and sock

Articles and boys' underwear Articles, loungewear and robe Articles and sock Articles," was "exclusive except as otherwise provided [in the License]." See License Agreement, §1.1(a). At §1.3(d) of the License Agreement, its states that "[t]he license granted hereunder as it relates to boxers shorts and T-shirts is non-exclusive . . ."

At some unspecified date, JMW, the manufacturer of Sean John boxer shorts and T-shirts for OOC, offered to sell Sean John boxer shorts and T-shirts to Ross pursuant to JMW's agreement with OCC, dated March 1, 2002, authorizing JMW to sell Sean John loungewear that had been canceled after factory production. Although OOC has not produced any confirming documents, plaintiff contends that no order from JMW was ever canceled thus making the JMW merchandise infringing goods.

In December of 2002, OOC allegedly discovered that Defendant Ross Stores, Inc. ("Ross" or "defendant") was selling counterfeit underwear and loungewear goods bearing the Sean John trademark. In a letter date December 18, 2002, OOC's sales manager, Matt Healey, advised Ross that "certain counterfeit and/or unauthorized unlicensed goods . . .bearing the 'Sean John' logo have been offered for sale to some of our customers by third parties," specifically naming JMW and "urged" Ross "to take caution in evaluating the source of Sean John goods offered for sale..." According to Mr. Healey, at the time he sent the letter, he was unaware of the March 1, 2002 agreement with JMW to sell merchandise canceled after factory production.

When it became clear that Ross had purchased the alleged unauthorized goods, representatives of OOC and Ross met in March and April of 2003 in an attempt to resolve the issue. While Ross maintains that the matter was resolved at the April meeting, OOC contends that no such agreement was reached. Ross recalls that Ellyn Lavigne, President of OOC, agreed to allow Ross to ship the Sean John merchandise it purchased from JMW to its stores in very small quantities.

While Mrs. Lavigne had limited recollection of the occurrences at the meetings, she stated that the matter was "never resolved . . ."

On November 19, 2003, a cease and desist letter was sent by OOC's attorney to Ross. On December 4, 2003, Ross responded advising of the April 2003 meeting. In March of 2004, OOC filed for bankruptcy. Thereafter, on December 27, 2004, this lawsuit was filed.

Plaintiff asserted allegations of counterfeiting and infringement under §32 of the Lanham Act, claims of unfair competition and dilution of a famous mark under §43(a) of the Lanham Act, and a common law claim of unjust enrichment. Both parties moved for summary judgment. In an oral decision placed on the record, without oral argument, the Court denied plaintiff's motion for summary judgment on liability and granted defendants' motion for summary judgment in part. The Court dismissed plaintiff's counterfeiting and infringement claims under §32, as well as the claim for dilution of a famous mark under §43(a), but denied the motion as to unfair competition under §43(a) and unjust enrichment. Defendants herein move for reconsideration. Plaintiff has not opposed the motion.

II.

In New Jersey, a motion for reconsideration or reargument is governed by L.Civ.R. 7.1(i). Whether to grant a motion for reconsideration is wholly within the district court's discretion. *Croker v. Boeing Co.*, 662 F.2d 975 (3d Cir. 1981); *Artista Records, Inc. v. Flea World, Inc.*, 356 F.Supp.2d 411, 415 (D.N.J. 2005); *Williams v. Sullivan*, 818 F.Supp. 92, 93 (D.N.J. 1993). The standard a party must meet to succeed on a motion for reconsideration is quite high. A party is entitled to seek reconsideration to correct manifest errors of law or fact, to present newly discovered evidence, *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), or where facts or legal authority were presented but overlooked. *Artista Records*, 356 F.Supp.2d at 415; *Williams*, 818 F.Supp. at 93.

Motions for reconsideration are granted sparingly, *Bowers v. NCAA*, 130 F.Supp.2d 610 (D.N.J. 2001), and only when dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered. *McGarry v. Resolution Trust Corp.*, 909 F.Supp. 241, 244 (D.N.J. 1995). A motion for reconsideration may be granted if: (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice. *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). On a motion for reconsideration, it is improper for a party to "ask the court to rethink what it had already thought through-rightly or wrongly," *In re Tutu Wells Contamination Litig.*, 162 F.R.D. 81, 88 (D.V.I.1995), and "in the absence of newly discovered, non-cumulative evidence, the parties should not be permitted to reargue previous rulings made in the case." *Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co. of Maryland*, 744 F.Supp. 1311, 1314 (D.N.J.1990).

### III.

In denying defendants' motion for summary judgment as to plaintiff's claim for unfair competition the Court cited to section 43(a) of the Lanham Act, which provides, in pertinent part:

> Any person who, on or in connection with any goods or services, . . . .uses in commerce any word, term, name, symbol, or device...or any false designation of origin . . . which-
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to . . . the origin, sponsorship, or approval of [his or her] goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Subscribing to the theory that "Congress has . . . given a broad class of suitors injured or likely to be injured by such wrong the right to relief in the federal courts," *L'Aiglon Apparel, Inc. v.*

*Lana Lobell, Inc.*, 214 F.2d 649, 651 (3rd Cir.1954); accord *Thorn v. Reliance Van Co., Inc.*, 736 F.2d 929, 932 (3rd Cir.1984), the Court gave credence to the operative language of the statute which applies to "any person" and merely requires a plaintiff to demonstrate a "reasonable interest to be protected" and a "'reasonable basis' for believing that this interest is likely to be damaged." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1111 (2d Cir.1997). The Court further relied upon a PLI article, Susan Progoff, *Trademark Licensing*, 879 PLI/Pat 41, 61-62 (2006), which provided:

> A trademark licensee has standing to assert a claim of unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) (1998), which provides that an action may be brought by 'any person who believes that he or she is likely to be damaged' by acts of unfair competition. This applies to both exclusive and non-exclusive licensees.

Susan Progoff, *Trademark Licensing*, 879 PLI/Pat 41, 61-62 (2006). Thus, the mere fact that OOC was a non-exclusive licensee did not bar its claim for unfair competition under Section 43(a) of the Lanham Act.

However, the Court overlooked the language of OOC's License Agreement with Christian Casey, LLC. At paragraph 13.7, the License Agreement states:

> If Licensee learns of any infringement, imitations or counterfeiting of the Licensed Mark or Articles or of any use of a trademark similar to the Licensed Mark or of any instances of the importation and sale of otherwise legitimate Products bearing the Licensed Mark (including Articles) by any third party, it promptly shall notify Licensor thereof. Upon receipt of Licensee's notice or when any such situation comes to their attention, Mr. Combs, SJC and Licensor shall take such action as they in their sole discretion deem advisable for the protection of their respective rights in and to the Licensed Mark and Articles. If requested by Mr. Combs, SJC or Licensor, Licensee shall cooperate with and follow the directions of Mr. Combs, SJC and/or Licensor in connection therewith, including by acting as a plaintiff or co-plaintiff in lawsuits and by causing its officers to execute pleadings and other related documents. Any action contemplated by this ¶13.7 shall be controlled by Mr. Combs, SJC and/or Licensor and neither Mr. Combs, SJC nor Licensor shall be required to take any action if it

> deems it inadvisable to do so and Licensee may not take any action with respect to the Licensed Mark without Licensor's prior approval. The costs, fees and expenses (including investigatory expenses and legal expenses such as attorneys' fees, court costs and filing fees) incurred in connection with any action involving the infringement of the Licensed Mark in the Territory and not involving counterfeit Products taken under this ¶13.7 shall be borne by Licensor. The costs, fees and expenses (including investigatory expenses and legal expenses such as attorneys' fees, court costs and filing fees) incurred in connection with any action involving counterfeit Products in the Territory taken under this ¶13.7 shall be borne by Licensee.

(See Declaration of Pinedo in Support of Defendant Ross Store's Motion for Summary Judgment, Exhibit A, License Agreement, ¶13.7).

Defendants point to *Finance Inv. Co. (Bermuda) Ltd. v. Geberit AG*, 165 F.3d 526, 532 (7th Cir. 1998), which found that "the express terms of the license prohibited [the defendants] from bringing suit in their own capacity." Under the terms of the agreement in *Geberit*, the licensee, upon knowledge of an infringement, was under a duty to notify the licensor. After notice was given, the licensor was obligated to bring suit. Only if the licensor failed to sue could the licensee institute its own action as a plaintiff. The Court held that "[b]ecause the license is the sole source giving the plaintiffs any interest in the [] mark, that same license's refusal to give them the right to sue under these circumstances strips them of the right to raise a §43(a) claim." *Id.*

Defendants further cite to *Visa U.S.A., Inc. v. First Data Corp.*, 2005 U.S. Dist. LEXIS 37276 (N.D. Cal., Aug. 16, 2005) for added support of this proposition.[1] There, the Northern District of California, acknowledging the less stringent standing requirements to bring an unfair competition claim under §43(a), found that Visa, U.S.A. lacked standing to sue because the license agreement

---

[1] Defendants also cite to *Nakajima v. SL Ventures, Corp.*, 2001 WL 641415 (N.D. Ill. June 4, 2001). However, in that case the district court chose not to address the "ramifications of *Finance Investment* [v. *Geberit* on account of the licensee] hav[ing] represented to the court that [the licensee] received permission from [the licensor] prior to filing its counterclaims, pursuant to the license agreement between the two." *Id.* at *2.

specifically provided that Visa International had retained the sole right to engage in unfair competition proceedings involving the VISA Marks. *Id.* at *16. Citing to *Geberit*, 165 F.3d 526, the district court similarly found that "the express terms of the contract between Visa, U.S.A. and Visa International prohibit Visa, U.S.A. from bringing suit in its own capacity." *Id.*

Here, the License Agreement obligates OOC, upon realization of any infringement, imitations or counterfeiting, to notify Christian Casey, LLC. After such notice, Sean John Combs, Sean John Clothing, Inc. and/or Christian Casey, LLC have discretion to institute or take appropriate action, legal or otherwise. The License Agreement specifically provides that OOC "may not take any action with respect to the Licensed Mark without Licensor's prior approval." (See Declaration of Pinedo in Support of Defendant Ross Store's Motion for Summary Judgment, Exhibit A, License Agreement, ¶13.7). At no point has OOC represented that it notified and/or acquired the approval of Christian Casey, LLC, as required by the License Agreement, and has provided nothing in response to this motion.

IV.

"In New Jersey, the tort of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Eli Lilly and Co. v. Roussel Corp.*, 23 F.Supp.2d 460, 496 (D.N.J.1998) (citing *Callano v. Oakwood Park Homes Corp.*, 91 N.J.Super. 105, 108 (App. Div. 1966)). "To assert a claim of unjust enrichment a plaintiff must show that 'it expected renumeration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of renumeration enriched defendant beyond its contractual rights.'" *Id.* (quoting *VRG Corp. v. GKN Realty*, 135 N.J. 539, 554 (1994)). "Thus, it is the plaintiff's (as opposed to a third party's) conferral of a benefit on defendant which forms the basis of an unjust enrichment claim." *Id.*

OOC alleges that defendants have been enriched through fraudulent conversion of OOC's goodwill and its license rights in the Sean John trademarks through the sale of infringing counterfeit products. It appears that OOC's claim is that defendants earned profits at OOC's expense because OOC could have earned those profits had defendants not fraudulently converted OOC's goodwill and license rights. However, OOC, as a non-exclusive licensee, has "failed to state a claim of unjust enrichment because it has not alleged (nor could it prove) that it conferred a benefit on defendants." *Id.* (citing *Barr Laboratories, Inc. v. Quantum Pharmics, Inc.*, 827 F.Supp. 111, 120 (E.D.N.Y. 1993); *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 615 F.Supp. 838, 856 (S.D.N.Y.1985), aff'd, 797 F.2d 70 (2d Cir.1986)).

For these reasons, defendants' motion for reconsideration is granted and the Complaint is dismissed in its entirety.

March 20, 2007

PETER G. SHERIDAN, U.S.D.J.